FILED: DECEMBER 12, 2008
08 CV 7134
JUDGE HART
MAGISTRATE JUDGE COX
AO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO., | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| EXPRESS SCRIPTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Walgreen Co. ("Walgreens"), for its Complaint against Express Scripts, Inc. ("ESI"), states as follows:

### NATURE OF ACTION

1.     This is an action for damages and other relief arising out of certain breaches of contract and other wrongful conduct by ESI in its business dealings with Walgreens.  In overview, Walgreens and ESI are parties to a written agreement under which Walgreens provides prescription services to members of pharmacy benefit plans managed by ESI.  ESI has breached that agreement and/or the implied covenant of good faith and fair dealing by engaging in unauthorized audits and opportunistic, bad faith audit tactics.  ESI also has wrongfully clawed back money belonging to Walgreens, converting more than $7.5 million to date.  On information and belief, ESI intends to engage in further breaches of its contractual obligations and conversion of additional monies belonging to Walgreens.

## THE PARTIES

2.      Plaintiff Walgreens is an Illinois corporation with its principal place of business in Deerfield, Illinois.  Walgreens is a leading pharmacy chain, operating more than 6,600 store locations in forty-nine states, the District of Columbia, and Puerto Rico.

3.      Defendant ESI is a Delaware corporation with its principal place of business in St. Louis, Missouri.  ESI is a pharmacy benefit manager, managing prescription drug plans for managed care organizations, health insurers, employers and employer groups, third-party administrators, government-sponsored plans, and others.  In pertinent part, ESI processes claims by its members for prescriptions filled at network pharmacies such as Walgreens.

## JURISDICTION AND VENUE

4.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties as follows:

> a.      Plaintiff Walgreens is an Illinois corporation with its principal place of business in Deerfield, Illinois.
>
> b.      Defendant ESI is a Delaware corporation with its principal place of business in St. Louis, Missouri.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.  Venue is also proper in this Court because defendant ESI is deemed to reside in this judicial district under 28 U.S.C. § 1391(c) inasmuch as it is a corporation subject to personal jurisdiction in this judicial district.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS COMMON TO ALL COUNTS OF THIS COMPLAINT**

**A.      The Contractual Relationship Between Walgreens and ESI.**

6.      In pertinent part, as a leading national retail pharmacy chain, Walgreens provides pharmacy services to eligible members in prescription drug programs managed by pharmacy benefit managers, such as ESI.  As a pharmacy benefit manager ("PBM"), ESI manages and administers prescription drug benefit plans on behalf of managed care organizations, health insurers, employers and employer groups, third party administrators, government-sponsored plans, and others (hereafter, "clients").  ESI negotiates discounts from retail pharmacies and drug manufacturers, develops prescription drug formularies (*i.e.*, lists of preferred drugs in prescription benefit plans that physicians are encouraged to prescribe, and pharmacists are encouraged to dispense, to members of those plans), and consults with clients on benefit design. ESI also establishes and maintains a network of retail pharmacies that agree to fill and dispense prescription drugs at a negotiated price for members of the pharmacy benefit plans managed by ESI.  On information and belief, ESI pays prescription claims submitted by those pharmacies with funds supplied to ESI by its clients.

7.      On information and belief, as compensation for its services as a PBM, ESI, pursuant to agreements to which Walgreens is not privy, receives administrative fees from its clients and also keeps the differential or "spread" between the price ESI pays to retail pharmacies and the price ESI collects from its clients.  On information and belief, ESI also benefits from any "recoveries" as a result of its audits of the retail pharmacies participating in its network.  As detailed herein, ESI has obtained such "recoveries" by wrongfully taking deductions from ESI's remittances to Walgreens or by recoupments or claw-backs of monies previously paid by ESI to Walgreens for previously adjudicated and approved prescription claims.

8.      For a period of time prior to August 2005, Walgreens and ESI had a business relationship under which Walgreens provided prescription drugs to members of certain ESI pharmacy benefit plans on a network-by-network basis, without a single, overarching contract. ESI and Walgreens subsequently negotiated and agreed to be bound by a single, overarching and fully integrated contract.  Thus, on August 26, 2005, ESI and Walgreens entered into the PERx Managed Care Pharmacy Provider Agreement (attached at Exhibit 1 and hereafter referred to as the "Agreement").[1]

9.      Pursuant to the Agreement, Walgreens agreed to provide pharmacy services to eligible members in pharmacy benefit plans managed by ESI.  Among other services, Walgreens agreed to dispense prescription medications to eligible members; to dispense medications in ESI's formulary when consistent with the pharmacist's professional judgment and when commercially reasonable; to collect applicable payments from members; to maintain records indicating prescriptions dispensed and delivered to members in an electronic record system routinely maintained by Walgreens' pharmacies in the normal course of business; and to provide reasonable consultation services with regard to members' medications.  ESI agreed to provide services to Walgreens including, but not limited to, on-line determination of member eligibility, claim processing, and preparation and distribution of remittance reports and payment of claims.

10.      The Agreement is fully integrated.  Section 9.C of the Agreement states:  "This Agreement, including the Exhibits, the Provider Certification form and the Provider Manual, constitutes the entire understanding of the parties hereto with respect to the subject matter hereof

---

[1] Exhibit A to the Agreement contains proprietary and trade secret information and therefore is not attached to the copy of the Agreement appended to this Complaint.  Walgreens will file a copy of Exhibit A to the Agreement under seal or as otherwise directed by the Court.

and, upon execution by the parties, supersedes all prior oral or written agreements between the parties with respect to the subject matter hereof."

11.     The term "Provider Manual," as used in the first sentence of Section 9.C of the Agreement, is defined in Section 1 of the Agreement, which states: "This Agreement shall be the overriding document in the event of a contradiction between the Provider Manual as amended from time to time by ESI and this Agreement.  The Provider Manual will not impose greater obligations and responsibilities on [Walgreens] than those agreed to in this Agreement."

12.     The definition of "Provider Manual" in Section 1 of the Agreement also states that "if the Provider Manual is revised by ESI in such a manner to impose a material obligation on [Walgreens] that is inconsistent with, or in addition to, [Walgreens'] obligations set forth herein, advance consent for such revisions from [Walgreens] shall be required."

13.     At no time during the term of the parties' Agreement has ESI sought consent from Walgreens for any revisions to the Provider Manual, either in advance or otherwise, and at no time has Walgreens consented to any revisions to the Provider Manual, with respect to audits or otherwise.

14.     Section 3.A of the Agreement provides that ESI is responsible for any and all reasonable costs incurred by Walgreens in obtaining delinquent amounts owed by ESI to Walgreens under the Agreement.

**B.     ESI Adjudicates Prescription Claims Submitted By Walgreens Through An Electronic System At The Point Of Sale.**

15.     As required by the Agreement, Walgreens employs ESI's on-line, real-time electronic system when filling prescriptions for customers who are covered by a pharmacy benefit plan managed by ESI.

16.    Using ESI's on-line system, the dispensing Walgreens pharmacist submits a prescription claim electronically to ESI by entering the pertinent patient, drug, doctor and prescription information into ESI's point of sale computer adjudication system. In real time, ESI confirms the member's eligibility for benefits under the applicable health benefit plan and the conditions to or limitations of coverage, and performs a concurrent drug utilization review of the member's other prescribed medications in order to alert the pharmacist to possible drug interactions and reactions.

17.    If the prescription claim is approved, ESI's on-line, real-time claims adjudication system authorizes the Walgreens pharmacist to fill the prescription, informs the pharmacist of the amount and type of payment to be collected from the customer, and confirms to the pharmacy that it will receive payment for the dispensed drug in accordance with the Agreement. If ESI requires additional information to adjudicate and approve the claim, ESI sends return on-line messages to the dispensing pharmacist. Upon receiving ESI's on-line approval of the prescription claim, the dispensing pharmacist proceeds to fill the customer's prescription.

18.    On a periodic basis, typically twice monthly, ESI remits payment to Walgreens for the cost of the prescriptions dispensed by Walgreens pharmacies pursuant to the Agreement. Typically, the price of each prescription has three components:  (a) the ingredient cost of the drug; (b) a dispensing fee due to the pharmacy for dispensing the prescription; and (c) a credit for any member payments collected by the pharmacy.

**C.    ESI And Walgreens Negotiate Toward A New Agreement During 2008.**

19.    Unless earlier terminated as provided in the Agreement, the Agreement was automatically renewable on December 31 for successive one-year terms.

20.    In early 2008, ESI orally notified Walgreens that it did not intend to renew the Agreement and instead initiated negotiations with Walgreens concerning a possible new agreement.  Subsequently, in September 2008, ESI provided written notice to Walgreens that it intended to terminate the Agreement effective January 1, 2009.  Thereafter, in November 2008, Walgreens and ESI entered into a new contract to become effective January 1, 2009.  The terms and provisions contained in the parties' new contract are not at issue in this Complaint.

21.    The parties' negotiations over a new contract were protracted and contentious. When ESI was unable to obtain new terms and concessions by negotiating with Walgreens at the bargaining table, ESI resorted to an improper course of conduct to wrongfully benefit itself at the expense of Walgreens under the original Agreement and to exert leverage and extract concessions from Walgreens in negotiations toward a new agreement.

22.    In particular, and as alleged more specifically below, as part of its improper course of conduct, and in violation of the Agreement, ESI purported to conduct "audits" of Walgreens pharmacies which it had no right to conduct, and abused and exploited the minimal audit rights it did have.  ESI also failed and refused to share the results of many of its so-called "audits" with Walgreens or to allow Walgreens a full and fair opportunity to question or contest ESI's audit findings, and then wrongfully recouped and clawed back monies belonging to Walgreens based upon its "audits."

23.    Walgreens has repeatedly (a) disputed ESI's asserted right to conduct certain audits; (b) contested the findings of ESI's audits when ESI has provided Walgreens with the opportunity and means to do so; and (c) provided evidence demonstrating ESI's audit errors and Walgreens' compliance with the Agreement, all to no avail.

**D.  The Agreement Between Walgreens And ESI Grants Only Limited Audit Rights To ESI.**

24.    After ESI's real-time adjudication and approval of prescription claims through its on-line adjudication system, ESI is permitted under the Agreement to conduct only two types of audits of Walgreens pharmacy records, and solely for the purpose of determining Walgreens' compliance with the terms of the Agreement.

25.    The first type of audit is known as an "on-site" audit, which is defined in Section 5 of the Agreement as follows:

> "Upon 14 days' prior written notice, [Walgreens] shall permit, and shall cause the Pharmacies to permit, ESI or a third party authorized by ESI and acceptable to [Walgreens] to inspect, review, audit and reproduce on-site at the location of the records at ESI's expense, during regular business hours and without charge, any prescription records maintained by [Walgreens] or any Pharmacy pertaining to ESI, Members or this Agreement to determine compliance with the terms of this Agreement."

26.    The second type of audit permitted by the Agreement is a limited request for copies of prescriptions.  Section 5 states:  "In addition, ESI may exercise the option to request, from [Walgreens] corporate contact only, copies of no more than 10 prescriptions per calendar quarter for review."   ESI is prohibited under the Agreement from directly contacting any individual Walgreens pharmacy to request copies of prescriptions.

27.    No other type of audit is permitted under the parties' Agreement.  The type and scope of permissible audits were specifically agreed upon terms of the parties' Agreement.

**E.  ESI Has Breached The Agreement By Engaging In Unauthorized Audits And Opportunistic, Bad Faith Tactics.**

28.    During negotiations over a possible new contract, ESI conducted audits of Walgreens pharmacies that it had no right to conduct and abused and exploited whatever limited

audit rights it did have, all for the improper purpose of gaining leverage over Walgreens and to benefit itself at Walgreens' expense. ESI's audits were different in kind, scope and number from audits it had conducted in the past and from audits permitted under the Agreement.

29.    ESI engaged in an unprecedented, abusive number of on-site audits of Walgreens pharmacies and issued audit reports claiming "discrepancies" far in excess of those historically claimed by ESI. ESI's audits were not conducted for any proper purpose, but instead as a means of obtaining leverage over Walgreens during the parties' negotiations over a possible new contract and to otherwise benefit ESI at Walgreens' expense.

30.    ESI made no secret of the fact that it was conducting an abusive number of on-site audits for an improper purpose. During contract negotiations, an ESI representative specifically told Walgreens that ESI's escalation in audits was done for the express purpose of exerting leverage over Walgreens.

31.    The pattern in ESI's on-site audits further corroborates ESI's opportunistic, bad faith audit tactics. Prior to March 2008, ESI conducted an average of 23 on-site audits per month. Between March and July 2008, however, as contract negotiations became more contentious, ESI conducted 40-50 on-site audits per month, doubling the average number of monthly on-site audits ESI had historically conducted. Beginning in August 2008, when the parties still had not reached agreement on a new contract, ESI, as a negotiating tactic, escalated even further the number of its on-site audits of Walgreens pharmacies. Thus, in August 2008, ESI conducted 158 on-site audits of Walgreens pharmacies, and in September 2008, ESI conducted 215 on-site audits. After the parties had negotiated the essence of their new agreement, which was executed on November 7, 2008, ESI's on-site audits reverted to more

normal levels—only 35 in October, 2008, and 35 in November, as compared to 215 during the height of the parties' negotiations in September.

32.    Not only did ESI conduct an unprecedented number of audits of Walgreens pharmacies during contract negotiations, but ESI also issued audit reports in which it took the position that there were "discrepancies" in the prescriptions Walgreens had filled pursuant to ESI's point of sale approval in amounts substantially greater than the average monthly discrepancy amounts asserted by ESI in the past.

33.    For example, ESI issued "discrepancy" reports based on its August 2008 audits, claiming more than $12.2 million in discrepancies—an amount 60 times greater than the historical average monthly audit discrepancy amount asserted by ESI.  Similarly, ESI issued "discrepancy" reports based on its September 2008 audits, claiming more than $15.6 million in discrepancies—an amount 75 times greater than the historical average monthly audit discrepancy amount asserted by ESI.

34.    Again, after the parties' negotiations culminated in a new agreement in November 2008, ESI's "discrepancy" reports reverted to more normal levels.  ESI's initial audit reports for the October audit period claimed $463,814 in "discrepancies," and its initial audit reports for the November audit period claimed $318,491 in "discrepancies," as compared to $15,645,393 in claimed "deficiencies" in the September audit period.

35.    As ESI admitted, the timing and unprecedented, unauthorized scope of ESI's audits were not for the purpose of determining Walgreens' compliance with the Agreement, but instead were part and parcel of ESI's opportunistic and bad faith tactics to exert pressure on Walgreens during contract negotiations and to wrongfully benefit itself at Walgreens' expense under the parties' current Agreement.

36.     ESI's improper attempt to exert leverage on Walgreens in contract negotiations did not end with ESI's abusive, unauthorized audits.  Rather, when things were not going its way during contract negotiations, ESI also refused to activate any newly opened Walgreens pharmacies on its system and also, for those stores ESI did activate on its system, refused to pay any claims that had accrued between the date the pharmacies opened and the date those pharmacies were activated.  Prior to that change in tactics—which ESI flatly told Walgreens was designed to wring concessions from Walgreens at the negotiating table—ESI had always promptly activated new pharmacies on its system and paid claims arising between pharmacy openings and pharmacy activations.  And once Walgreens signed the new agreement, ESI quickly resumed adding new Walgreens pharmacies to its network, including the pharmacies it had refused to activate during contract negotiations, and also resumed its prior practice of paying retroactive claims.

37.     Not only were ESI's audits conducted in bad faith for a wrongful purpose, but ESI's audits also were improper, and its audit findings were deficient and erroneous, in several additional respects, as detailed below.

**1.     ESI Conducted Unauthorized Audits Of Pre-Agreement Claims.**

38.     ESI had no right, under the Agreement or otherwise, to conduct any type of audit of claims submitted by Walgreens and paid by ESI prior to August 26, 2005, the effective date of the Agreement.

39.     Nonetheless, during the parties' negotiations toward a new contract, ESI audited numerous prescription claims that Walgreens submitted, and ESI approved and paid, *before* the parties entered into the Agreement.  In fact, nearly 60% of the "discrepancy" amounts claimed in ESI's initial audit reports for audits conducted in August and September 2008—worth more than

$17 million, according to ESI's calculations—relate to claims that were submitted, approved, and paid months and even *years* before the effective date of the Agreement.

40.     ESI already has recouped and clawed back millions of dollars belonging to Walgreens based on "audits" of such pre-Agreement claims, and has notified Walgreens that such audits will serve as the basis for ESI to recoup and claw back additional money belonging to Walgreens by taking future deductions from payments to Walgreens.

41.     ESI's audits of pre-Agreement claims, and any and all actual or anticipated deductions by ESI based on audits of pre-Agreement claims, are improper and constitute a breach of the Agreement.

### 2.    ESI Retroactively Denied Claims Adjudicated And Approved By ESI's On-Line System At The Point Of Sale.

42.     Section 2.A.3 of the Agreement provides that "ESI may not deny claims submitted by [Walgreens] for payment subsequent to [Walgreens] receiving approval via the On-Line System."

43.     Nevertheless, included among ESI's audit reports are alleged "discrepancies" based on information that Walgreens submitted to ESI via the real-time, on-line system and that ESI adjudicated and approved.  Stated simply, at the point of sale, ESI approved payment to Walgreens.  Months and years later, ESI conducted its unauthorized or otherwise improper audits, and then took deductions from future payments to Walgreens based upon its conclusion that the claims it originally approved were somehow not approved, and that the payments made in connection with such claims were therefore subject to recoupment.

44.     ESI has maintained that, notwithstanding Section 2.A.3 of the Agreement, ESI may retroactively deny claims it previously approved and paid if it decides, months or years later, that the information supplied by Walgreens during the on-line adjudication and approval

process was insufficient or mistaken.  Yet, if there were a discrepancy or deficiency in the information supplied by Walgreens during the on-line adjudication process, then ESI was required either to obtain additional or clarifying information from the Walgreens pharmacist by using on-line return messages during the adjudication process, or to reject and not approve the prescription claim, with the result that the prescription would not be filled.  Once ESI had adjudicated and approved the claim on-line and notified the Walgreens pharmacist that the prescription was approved for filling, then Section 2.A.3 of the Agreement precluded ESI from thereafter retroactively denying Walgreens' claim for payment based on its filling of the prescription approved by ESI.

45.    As more fully alleged below, even if such previously adjudicated and approved claims were subject to post-approval audit and retroactive denial by ESI, ESI has asserted alleged "discrepancies" that are erroneous and that impose obligations on Walgreens that are additional to, inconsistent with, or contrary to the obligations imposed under the Agreement. ESI also has improperly refused to accept and consider documentation from Walgreens in connection with the retroactively denied claims that challenges ESI's audit findings or that otherwise demonstrates Walgreens' compliance with the Agreement in connection with such claims.

### 3.    ESI 's Audits Also Were Improper and Erroneous In Other Respects.

46.    As part of its audits, ESI has made demands for production of records that Walgreens has no obligation to maintain for the time periods covered by ESI's demands.  ESI also has demanded production of unprecedented amounts of records in an unreasonable time frame, and has refused to consider documentation submitted by Walgreens beyond ESI's arbitrarily-imposed time deadlines, which have no basis in the parties' Agreement.

47.     For example, ESI has retroactively denied claims, and threatened to retroactively deny additional claims, on the grounds that Walgreens was unable, months or years after the fact, to locate copies of prescriptions underlying the claims within the time demanded by ESI's auditors.  ESI has asserted that it is entitled to deny claims on this basis (coded in ESI's audit reports as "CF" or "Can't Find Rx") despite the fact that Section 5 of the Agreement did not require Walgreens to preserve prescription records in connection with many of those claims.  Even if the prescription records ESI requested were still within the required record keeping time periods, by its extremely high audit volume and arbitrary and short deadlines, ESI deprived Walgreens of sufficient time to locate prescription records or to obtain the physician letters alternatively permitted under the Agreement.  Moreover, even when Walgreens *has* located supporting documentation on such claims, as well as many other claims ESI has retroactively denied on other grounds, ESI simply has refused to consider such documentation.

48.     Additionally, ESI's claimed "discrepancies" are erroneous and seek to impose obligations on Walgreens that are greater than or inconsistent with the obligations contained in the Agreement.  For example, ESI has issued audit "discrepancies" on the basis of pharmacies not having maintained signature logs documenting delivery of prescriptions to members.  Yet, the Agreement expressly provides in Section 5:  "Provider will maintain an electronic tracking system *in lieu of a signature log* regarding the delivery of Covered Medications to the Member or Member's representative."   In other words, even though Walgreens has maintained an electronic signature log expressly authorized by the Agreement, ESI has taken the position in recouping monies belonging to Walgreens that an electronic signature log is improper.

49.     Another example of ESI's erroneous audit conclusions are those alleged "discrepancies" relating to prescriptions dispensed with a "Use as directed" ("UD") instruction

-14-

from the prescribing physician. ESI has retroactively denied those claims, and seeks to retroactively deny additional such claims, asserting that the Agreement prohibits Walgreens from dispensing prescriptions with a UD instruction. In fact, the Agreement says no such thing. To the contrary, Section 2.A.3 of the parties' Agreement specifically authorizes Walgreens to submit claims using the National Council for Prescription Drug Programs ("NCPDP") format, in which "Use as directed" is a standard field.

50.    Similarly, ESI has denied numerous claims, and seeks to deny many more, on the basis of supposed "discrepancies" described by nothing more than a single code: "Miscellaneous." This catchall code is too vague to support any deduction, and effectively deprives Walgreens of the opportunity to respond to or appeal such findings in any meaningful way.

### 4.    ESI Conducted Unauthorized Telephone Audits.

51.    In addition to the aforementioned on-site audits, between 2005 and February 2008, ESI also directly contacted individual Walgreens pharmacies, in breach of the express terms of the Agreement, and conducted approximately 11,000 "telephone audits" of claims submitted by Walgreens. Based on those "audits," ESI has recouped or otherwise deducted $3,292,870 from payments to Walgreens.

52.    ESI is not permitted under the Agreement to conduct telephone audits of Walgreens pharmacies. Accordingly, Walgreens demanded that ESI cease and desist from conducting telephone audits and to return $3,292,870 ESI wrongfully recouped and deducted from payments to Walgreens based on such "audits." Not only did ESI fail to return the $3,292,870, but it continued to engage in telephone audits and recouped and otherwise deducted an additional $2,455,679 purportedly based on the results of those "audits." Thus, through

September 2008, ESI has wrongfully and unilaterally recouped and otherwise deducted $5,748,549 from payments due to Walgreens, purportedly on the basis of ESI's telephone audits.

53.     Not only are ESI's telephone audits not permitted by the Agreement, but ESI also failed and refused to provide Walgreens with any documentation or explanation of the findings of any of its telephone audits of Walgreens pharmacies, or the deductions taken by ESI based on those audits, until *after* ESI already had taken its deductions.  ESI also has refused Walgreens any opportunity to appeal or otherwise challenge ESI's findings based on the telephone audits or to "cure" any claimed deficiencies.

54.     Walgreens has demanded that ESI return $5,748,549 to Walgreens and that ESI cease and desist from performing telephone audits of Walgreens pharmacies.  Walgreens also has demanded that ESI provide an accounting and full documentation as to the reasons for its deduction and recoupment of monies from Walgreens based on telephone audits.  To date, ESI has refused to return the money as demanded to Walgreens or to provide an accounting or a full and fair documentation of its telephone audits.

**F.     ESI Has Converted Money Previously Paid To And Properly Belonging to Walgreens.**

55.     With evil motive and reckless indifference to Walgreens' rights, ESI has devised and implemented a claw-back scheme to intentionally and wrongfully take back money previously paid to and properly belonging to Walgreens.

56.     As the first step in its scheme, as set out more fully above, ESI conducts improper or otherwise erroneous audits of prescription claims that ESI had approved and paid to Walgreens months or even years earlier.  ESI then takes back money belonging to Walgreens based on those so-called "audits."  In some instances, ESI executes its claw-back without so

much as affording Walgreens any opportunity to challenge or question the underlying "audits" or their alleged findings.

57.    Since ESI cannot get at Walgreens' money directly, it does so indirectly by taking money from payments ESI owes to Walgreens on entirely *separate* claims that are not implicated in any audit findings—improper, erroneous or otherwise—and that are not subject to any valid deduction.  The net result of ESI's mechanism and claw-back scheme is that money previously paid to and properly belonging to Walgreens is taken by ESI, the same as if ESI went into Walgreens' bank and withdrew money from Walgreens' bank account.

58.    In November 2008, ESI used its claw-back scheme to take at least $7,826,752 from Walgreens, purportedly in connection with the improper and erroneous August 2008 on-site audits.

59.    ESI has advised Walgreens that it intends to continue to take money from Walgreens using its claw-back scheme in connection with the improper and erroneous September 2008 on-site audits and otherwise.  In particular, ESI has advised Walgreens that it intends to take money from an upcoming December remittance due to Walgreens.

### G.    Walgreens Requires An Accounting In Order To Uncover The Full Extent Of Its Damage Due To ESI's Improper Conduct And Breaches Of The Agreement.

60.    In order for Walgreens to uncover the full nature and extent of its damage due to ESI's improper conduct, claw-back scheme, and breaches of the Agreement, Walgreens requires an accounting of ESI's performance under the Agreement, including full disclosure of (a) ESI's audit findings and bases for deductions from payments to Walgreens; (b) all claw-backs taken by ESI of monies paid and belonging to Walgreens for previously-adjudicated and approved prescription claims; and (c) ESI's retention and/or disbursement of amounts deducted from

payments to Walgreens, or improperly taken from Walgreens, based upon ESI's "auditing" of Walgreens' claims.

61.    Without an accounting, Walgreens' remedy at law is inadequate.  Walgreens cannot determine the full nature and extent of its damages with any precision because ESI has exclusive control over the complex records from which Walgreens needs information.

62.    Walgreens has made demand for an accounting, which ESI has refused.

**H.    Walgreens Sent A Demand Letter To ESI, Which Responded, First, By Contacting Walgreens To Stall The Filing Of Walgreens' Lawsuit, And, Second, By Then Filing A Declaratory Judgment Action Of Its Own In The Eastern District Of Missouri.**

63.    On December 1, 2008, Walgreens sent a letter to ESI, demanding that ESI cease and desist from conducting unauthorized and improper audits of Walgreens pharmacies, cease and desist from taking money belonging to Walgreens, provide an accounting of its secret audits and bases for deductions from Walgreens, and return the money ESI had improperly taken from Walgreens.  Walgreens demanded a response to its letter within five days.

64.    On December 5, 2008, ESI called to inform Walgreens' counsel that ESI intended to respond to Walgreens' letter the following week.  ESI said it needed more time because ESI's response would need to be reviewed and approved by several ESI executives, but that ESI hoped to be able to respond by mid-week.  On December 9, 2008, Walgreens' counsel advised ESI that Walgreens would agree to extend the deadline for responding to its December 1, 2008 demand letter to the close of business on December 10, 2008, and that if a satisfactory response were not received by then, Walgreens would proceed to file its lawsuit.

65.    Walgreens never received a letter in response to its December 1, 2008 letter. Instead, on December 10, 2008, ESI filed a lawsuit against Walgreens in federal court in the

Eastern District of Missouri, seeking among other things a declaratory judgment in ESI's favor on each of the matters detailed in Walgreens' December 1, 2008 demand letter.

66.     After the filing of its lawsuit, ESI called to notify Walgreens (a) that it had filed a lawsuit; and (b) that it intended to continue to take further deductions from the December remittance due to Walgreens.  ESI has not yet served a Complaint and Summons on Walgreens.

## COUNT I:
## BREACH OF CONTRACT

67.     Plaintiff Walgreens incorporates by reference each and every allegation above as though fully set forth and realleged herein.

68.     The valid and enforceable Agreement sets forth the relevant rights and obligations of ESI and Walgreens with respect to their contractual business relationship.

69.     In addition, the Agreement contains an implied covenant of good faith and fair dealing.  That covenant requires ESI to act toward Walgreens in an honest and fair manner and precludes ESI from exercising any discretion conferred by the Agreement in such a manner as to evade its obligations under the Agreement, or to deprive Walgreens of its rights and expected benefits under the Agreement, or to ensure gains for ESI in excess of those reasonably expected at the time of contracting.

70.     At all pertinent times, Walgreens has fully performed its obligations under the Agreement and has provided pharmacy services to eligible members of prescription drug programs managed by ESI in accordance with the terms of the Agreement.

71.     ESI has breached the Agreement and/or the covenant of good faith and fair dealing by its acts, practices, and omissions described above, including but not limited to (a) by auditing claims that had been submitted by Walgreens, and had been approved and paid by ESI, prior to the Agreement; (b) by auditing and retroactively denying claims that were fully

adjudicated and approved by ESI's on-line system at the point of sale; (c) by auditing Walgreens' claims for purposes other than to determine compliance with the terms of the Agreement; (d) by conducting unauthorized telephone audits; (e) by failing and refusing to provide Walgreens with documentation or details of its audit findings; (f) by failing and refusing to provide Walgreens a full and fair opportunity to challenge the secret and other audit findings; (g) by denying claims for reasons having no basis in the Agreement or in fact, including claims coded "CF," "UD," "Miscellaneous," and otherwise; (h) by refusing to accept or consider documentation submitted by Walgreens as proof of its compliance with the terms of the Agreement; (i) by clawing back money belonging to Walgreens with improper deductions from subsequent payments to Walgreens; and (j) by engaging in opportunistic, bad faith audit tactics.

72.    Walgreens has been significantly damaged by ESI's breaches of the Agreement and/or the covenant of good faith and fair dealing in an amount to be determined at trial.

**WHEREFORE**, plaintiff Walgreens respectfully asks that this Court:

a.    Award Walgreens compensatory damages;

b.    Order ESI to render an accounting of its performance under the Agreement, such accounting to include disclosure of (i) ESI's audit findings and the bases for any and all deductions from payments to Walgreens; (ii) all claw-backs taken by ESI of monies paid and belonging to Walgreens for previously-adjudicated and approved prescription claims; and (iii) ESI's disbursement and retention of deductions from payments to Walgreens based on its auditing of Walgreens' claims;

c.    Award Walgreens a judgment against ESI for any sum or balance found to be due from ESI based on the accounting;

d.    Award Walgreens costs, interest, expenses and reasonable attorneys' fees and experts' fees; and

e.    Award Walgreens such further relief as the Court may find necessary and appropriate.

## COUNT II:
## UNJUST ENRICHMENT / RESTITUTION

73.     Plaintiff Walgreens incorporates by reference each and every allegation above, except for those that concern the Agreement, as though fully set forth and realleged herein.

74.     Alternatively to Count I, Walgreens alleges that ESI has been unjustly enriched at Walgreens' expense.  Walgreens has provided benefits to ESI by providing pharmacy services to, and incurring the cost of filling prescriptions for, eligible members of prescription drug programs managed by ESI.  ESI has improperly withheld or clawed back payment to Walgreens for the services it has rendered that benefit ESI.  ESI's retention of benefits without payment violates the fundamental principles of justice, equity and good conscience.

**WHEREFORE**, plaintiff Walgreens respectfully asks that this Court:

   a.     Award Walgreens restitution damages in the amount by which ESI has been unjustly enriched.

   b.     Award Walgreens costs, interest, expenses and reasonable attorneys' fees and experts' fees; and

   c.     Award Walgreens such further relief as the Court may find necessary and appropriate.

## COUNT III:
## CONVERSION

75.     Plaintiff Walgreens incorporates by reference each and every allegation above as though fully set forth and realleged herein.

76.     By executing the claw-back scheme described above, ESI has wrongfully assumed unauthorized control of at least $7,826,752 belonging to Walgreens.

77.     Walgreens has an absolute and unconditional right to, and is entitled to immediate possession of, the $7,826,752 presently under the wrongful and unauthorized control of ESI.

78.    On December 1, 2008, Walgreens demanded return of the $7,826,752 presently under the wrongful and unauthorized control of ESI.

79.    ESI has failed to comply with Walgreens' demand for return of the $7,826,752 presently under ESI's wrongful and unauthorized control.  Instead, ESI has continued to exercise wrongful and unauthorized control over these monies.

80.    ESI's wrongful and unauthorized control of Walgreens' $7,826,752 has caused damage to Walgreens.

**WHEREFORE**, plaintiff Walgreens respectfully asks that this Court:

a.    Order ESI to return the $7,826,752 to Walgreens;

b.    Award Walgreens any compensatory damages;

c.    Award Walgreens punitive damages;

d.    Award Walgreens costs, interest, expenses and reasonable attorneys' fees and experts' fees; and

e.    Award Walgreens such further relief as the Court may find necessary and appropriate.

## JURY DEMAND

Plaintiff Walgreens hereby demands a trial by jury on all issues so triable.

Dated:  December 12, 2008

Respectfully submitted,

*s/ Sallie G. Smylie, P.C.*

_____

Richard C. Godfrey, P.C.
Sallie G. Smylie, P.C.
D. Joseph Piech
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

***Attorneys for Walgreen Co.***